# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

JAMEKA K. EVANS, )
      Plaintiff, )
)
v. ) Case No. CV415-103
)
GEORGIA REGIONAL HOSPITAL, )
*et al.*, )
)
      Defendants. )

## REPORT AND RECOMMENDATION

Proceeding *pro se*, Jameka K. Evans filed this action against her ex-employer, the Georgia Regional Hospital, plus three individuals, for violating Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*[1] Doc. 1 at 1. She moves for leave to file this case *in forma pauperis* ("IFP") and for appointment of counsel. Doc. 2. Finding her

---

[1] Title VII prohibits discrimination with respect to an employee's "compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). It thus makes it unlawful for an employer:

> to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, *sex*, or national origin.

42 U.S.C. § 2000e-2(a)(1) (emphasis added).

indigent, the Court grants her IFP motion (doc. 2) and addresses her "counsel" motion below. Doc. 2. It will now screen her case under 28 U.S.C. § 1915(e)(2)(B)(ii), which requires a district court to dismiss an IFP complaint "at any time" it is determined to fail to state a claim for relief. *See Hamzah v. Woodmans Food Mkt., Inc.*, 2014 WL 1207428 at * 1 (W.D. Wis. Mar. 24, 2014).

I. ANALYSIS

A. Substantive Claim

A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, Evans' factual allegations must enable the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). She also must plead a Title VII prima facie case establishing that: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside of her protected class more favorably than she was treated; and (4) the employment action was causally related to the protected status.

2

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

Evans alleges that, during her 2012-2013 employment[2] with the hospital as a "security officer," she was "targeted [by her supervisor] for termination" because she was perceived as gay and, while she did not broadcast her sexuality, "it is evident that I identify with the male gender because I presented myself visually (male uniform, low male haircut, shoes, etc.)." Doc. 1 at 3; *see also* doc. 2 at 4. She claims that her supervisors harassed her because of her perceived homosexuality, and she was otherwise "punished because my status as a gay female did not conform to my department head's . . . gender stereotypes associated with women. This caused a great strain on me and created a hostile work environment. Chief [Charles] Moss also appointed/promoted a less qualified person [3] with no prior security experience as my direct supervisor." Doc. 1 at 4 (footnote added). Evans "left the job

---

[2] Her Complaint asserts she worked there from "8/1/12 – 10/11/13." Doc. 1 at 3. No untimeliness finding (*i.e.*, that she took too long after any complained-of acts to file her EEOC complaint) is reflected in the EEOC's January 22, 2015, Right to Sue letter. Doc 1-1 at 9. *See Russell v. City of Mobile*, 2013 WL 1567372 at *4 (S.D. Ala. Apr. 12, 2013) ("A charge not made within 180 days of the alleged discriminatory action becomes time barred. 42 U.S.C. § 2000e5(e)(1).").

[3] She does not specify that person's gender or sexual orientation.

3

voluntarily." *Id.* at 3. She wants the named defendants to "be held liable [for discriminating against her] based on [her] sex as a gay female in violation of Title VII. . . ." *Id.* at 5.

Evans is alleging discrimination on the basis of her homosexuality (gay female) and gender non-conformity (appearing "male").[4] "Although the Eleventh Circuit has not addressed this issue, every court that has

---

[4] While the Court construes *pro se* complaints liberally, it cannot raise theories of recovery for, or plug holes in, legal arguments raised by litigants. *Boles v. Riva*, 565 F. App'x 845, 846 (11th Cir. 2014) ("[E]ven in the case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action.") (quotes and cite omitted); *Sec'y, Fla. Dep't of Corr. v. Baker*, 406 F. App'x 416, 422 (11th Cir. 2010). Evans has accompanied her complaint with an EEOC right to sue letter (hence, she evidently has exhausted, as Title VII commands, her administrative remedies); a one-page handwritten EEOC-stamped-received complaint; and her own typed materials and emails covering the 2013-2014 period. Doc. 1-1.

Significantly, however, *none* of these materials recount discriminatory acts based on gender, homosexuality, or sexual orientation. And, although Evans does not disclose any details of the EEOC's investigation here, she is reminded of the administrative consistency doctrine. *McIntyre v. Aurora Cares, LLC*, 2011 WL 2940939 at * 2 (S.D. Ala. July 21, 2011); *see also Russell*, 2013 WL 1567372 at *8; *Tillery v. ATSI, Inc.*, 2003 WL 25699080 at * 1 (N.D. Ala. Apr. 14, 2003) ("As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge. . . . [A]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would frustrate the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge.") (quotes and cite omitted); *see also id.* ("[T]he claims that may be alleged in a judicial complaint are limited by four boundaries: (i) the specific claims alleged in the underlying EEOC charge; (ii) those claims which are like or reasonably related to those alleged in the underlying charge; (iii) the scope of the EEOC investigation that can reasonably be expected to grow out of the charge of discrimination; and (iv) those discriminatory acts which were in fact considered during the EEOC's investigation." (quotes and footnotes omitted).

4

done so has found that Title VII . . . was not intended to cover discrimination against homosexuals. *See, e.g., Simonton v. Runyon*, 232 F.3d 33, 35 (2d Cir. 2000) ('The law is well-settled in this circuit and in all others to have reached the question that Simonton has no cause of action under Title VII because Title VII does not prohibit harassment or discrimination because of sexual orientation.')." *Arnold v. Heartland Dental, LLC*, ___ F. Supp. 3d ___, 2015 WL 1456661 at * 5 (M.D. Fla. Mar. 30, 2015).[5] *See also Fredette v. BVP Mgmt. Assocs.*, 112 F.3d 1503, 1510 (11th Cir. 1997) (noting, in a same-sex harassment case: "We do not hold that discrimination because of sexual orientation is actionable").

Other courts have held that homosexuality is *not* a "protected class" within the meaning of Title VII, which means any substantive discrimination claims based on it fail as a matter of law. *Harder v. New York*, ___ F. Supp. 3d ___, 2015 WL 4614233 at * 5 (N.D.N.Y. Aug. 3, 2015) (state employee failed to establish prima facie case of disparate

---

5   In *Arnold*, however, the plaintiff stated such a claim -- under *state* law. *Id.* at * 5 (claims by female who identified as a gender non-conforming female homosexual, that employer's discriminatory actions were related to her gender non-conforming status, rather than her sexual orientation, were sufficient to allege sex discrimination, as required to state claims for hostile work environment and disparate treatment under state civil rights act). Also, Arnold cited to a comparator, *id.*, while Evans does not.

5

treatment, hostile work environment, or constructive discharge under Title VII through allegations that his roommate/coworker's continued comments to staff and residents at training academy where they resided and at their first work assignment created the false impression that he was homosexual; perceived sexual orientation was not a protected class); *Hively v. Ivy Tech Cmty. College*, 2015 WL 926015 at *3 (N.D. Ind. Mar. 3, 2015) ("[S]exual orientation is not recognized as a protected class under Title VII"). So while same-sex harassment (*e.g.*, a homosexual supervisor's advances upon a same-sex employee), can be actionable under Title VII,[6] Title VII discrimination claims based upon the plaintiff's sexual orientation or perceived sexual orientation are not. *Stevens*, 2015 WL 1245355 at * 7 (collecting cases); *see also id.* ("In sum, there is no support for plaintiff's claim that Title VII gives rise to protection for discrimination based upon a supervisor's perception that she is a lesbian.").

Finally, to say that an employer has discriminated on the basis of gender non-conformity is just another way to claim discrimination based

---

[6] *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998) ("[S]ex discrimination consisting of same-sex sexual harassment is actionable under Title VII"); *Stevens v. Ala. Dep't of Corr.*, 2015 WL 1245355 at * 7 (N.D. Ala. Mar. 18, 2015).

on sexual orientation. To inflict an adverse employment action (unfair discipline, denied promotion, etc.) because a male is too effeminate or a female too masculine is to discriminate based on sexual orientation ("gender nonconformity"), which is reflected in the gender image one presents to others -- that of a male, even if one is biologically a female. Hence, Evans' allegations about discrimination in response to maintaining a male visage also do not place her within Title VII's protection zone, even if labeled a "gender conformity" claim, because it rests on her sexual orientation no matter how it is otherwise characterized. *Cf. Thomas v. Osegueda*, 2015 WL 3751994 at *4 (N.D. Ala. June 16, 2015) (applying analogous federal housing law principles to conclude that while gay sexual stereotyping cases "often involve harassment that is offensive, relief for 'sex' discrimination is narrowly limited and expanding such protections further would 'require action by Congress.'").[7]

---

7  Other courts have similarly rejected gender non-conformity claims stemming from a plaintiff's homosexuality. *See Anderson v. Napolitano*, 2010 WL 431898 at *6 (S.D. Fla. Feb. 8, 2010) (rejecting implication that all homosexual men fail to comply with male stereotypes because they are homosexual, stating "that would mean 'that every case of sexual orientation discrimination [would] translate into a triable case of gender stereotyping discrimination, which would contradict Congress's decision not to make

7

## B. Retaliation Claim

Evans also raises a retaliation claim. Doc. 1 at 5. Retaliation is unlawful:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice *made an unlawful employment practice* by this subchapter. . . .

42 U.S.C. § 2000e-3(a) (emphasis added). A plaintiff must plead a *prima facie* case: "(1) that she engaged in *protected* conduct and (2) suffered an adverse employment action that was (3) causally connected to the protected expression." *Stevens*, 2015 WL 1245355 at * 10 (citing *Bolivar v. Univ. of Ga. Survey and Research*, 2012 WL 4928893 at * 8 (M.D. Ga. Oct. 16, 2012) and *Taylor v. Runyon*, 175 F.3d 861, 868 (11th Cir. 1999)).

Evans alleges that on one occasion a supervisor "repeatedly shut the door on me without giving me the opportunity to move." Doc. 1 at 5 (here she cites a state ethics code and insists that such behavior violated it). "Also, by me going to HR chief Moss was trying [sic] to find ways of

---

sexual orientation discrimination cognizable under Title VII"), cited in *Arnold*, 2015 WL 1456661 at * 7; *see also* Zachary R. Herz, *Price's Progress: Sex Stereotyping And Its Potential For Antidiscrimination Law*, 124 YALE L.J. 396, 430 (2014) ("courts have generally frowned on attempts to read conduct that is neither universal to a group nor limited to its members as functionally equivalent to a protected Title VII status. . . .").

terminating me, this is evidence of retaliation. This information is from Sgt. Harvey Pegue who worked closely with Chief Moss." *Id.* Moss "did everything he could to terminate me including several notices. He went as far as stating to Sgt. Pegue of getting rid of me [sic] because I had too much information of wrong during [sic] by him in the department." *Id.* at 4 (citing to emails furnished with her complaint).

The problem for Evans is that she has failed to allege that she opposed "an unlawful employment practice" and the retaliators knew that (and retaliated against her because of her "protected activity"). As noted above, it is simply *not* unlawful under Title VII to discriminate against homosexuals or based on sexual orientation. Hence, Evans fails to meet the causation element:

> The plaintiff has the obligation to show a causal connection by showing "that the decision makers were aware of the protected activity and the protected activity and the adverse action were not wholly unrelated." *Bass v. Board of County Comm'rs., Orange County*, 256 F.3d 1095, 1119 (11th Cir. 2001) (overturned on other grounds). The causal link requirement is to be construed broadly, and . . . "a plaintiff need only show that the protected activity and the adverse action were not wholly unrelated." *Brungart v. Bellsouth Telecommunications, Inc.*, 231 F.3d 791, 799 (11th Cir.2000) (quoting *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999)). However, to meet even this low threshold of proof of causation, the plaintiff must offer some evidence from

9

which a jury could infer that the *protected activity* caused the adverse employment action.

*Stevens*, 2015 WL 1245355 at *10. But there evidently was *no* protected activity here. Again, plaintiff was complaining about an employment practice (homosexual or sexual orientation discrimination) that is not unlawful under Title VII.[8] As explained by another district court:

> Although Title VII does not prohibit sexual orientation discrimination, it arguably does prohibit retaliation against persons who file charges of discrimination based on a reasonable, good-faith (albeit mistaken) belief that the complained-of practice was prohibited. *Clark County School Dist. v. Breeden*, 532 U.S. 268, 270 (2001), citing 42 U.S.C. § 2000e-3(a). Theoretically, an employee who mistakenly believes that federal law prohibits discrimination on the basis of sexual orientation and files a complaint of discrimination on that ground might contend that he nevertheless engaged in protected conduct under Title VII. In such circumstances, the critical question would appear to be whether the employee's mistaken belief as to the reach of Title VII was reasonable. Nevertheless, this Court is aware of no authority adopting this proposition, and indeed, there is some caselaw to the

---

[8] That court reasoned:

> Here, Hamzah has alleged an adverse employment action -- termination -- and has alleged that his termination was due to the complaints he filed, but has not alleged that those complaints opposed a practice that is unlawful under Title VII and has not been specific as to other possible claims. Rather, he simply alleges that he filed internal complaints about "various forms of harassment." Particularly since Hamzah has specifically alleged some harassment based on sexual preference -- which is not prohibited by Title VII -- his broad claim of retaliation is not enough by itself to make his Title VII claim plausible.

*Hamzah*, 2014 WL 1207428 at * 5.

10

contrary. *See Hamner v. St. Vincent Hosp.*, 224 F.3d 701, 707 (7th Cir. 2000); *see also Howell v. North Central College*, 331 F.Supp.2d 660, 663-64 (N.D.Ill. 2004) (applying Title IX).

*Cunningham v. City of Arvada*, 2012 WL 3590797 at *1 (D. Colo. 2012); *see also Hamner*, 224 F.3d at 707 ("The plaintiff must not only have a subjective (sincere, good faith) belief that he opposed an unlawful practice; his belief must also be objectively reasonable, which means that the complaint must involve discrimination that is prohibited by Title VII."). "Because [Evans] has not alleged that she put [her employer] on notice of a violation of [Title VII], she [also] has failed to allege that she engaged in statutorily protected expression." *Arnold*, 2015 WL 1456661, *6.

Additionally, Evans also sues three individuals -- Charles Moss, Lisa Clark and Jamekia Powers, doc. 1 at 1, 3 -- but Title VII permits suits only against a plaintiff's *employer*, not against co-employees or supervisors in their individual capacity. *Bryant v. Dougherty Cnty. Sch. Sys.*, 382 F. App'x 914, 916 n. 1 (11th Cir. 2010); *Fulst v. Thompson*, 2009 WL 4153222 at * 3-4 (S.D. Ohio Nov. 20, 2009) ("Supervisory employees are not typically proper defendants under Title VII because they do not fall within

the definition of 'employer.'"). Hence, the Court advises that her case against those defendants be dismissed with prejudice.

## III. CONCLUSION

In that Evans has pled no actionable claim nor seems likely to, her case should be **DISMISSED WITH PREJUDICE** with no "second-chance" amendment option. *Langlois v. Traveler's Ins. Co.*, 401 F. App'x 425, 426-27 (11th Cir. 2010) (even though IFP's litigant's *pro se* complaint failed to state basis for federal jurisdiction and failed to state a claim, and she failed to seek leave to amend her complaint, nevertheless she should have been afforded an opportunity to amend deficiencies prior to dismissal, where no undue time had elapsed, no undue prejudice could be shown, and the record revealed some potential claim-resuscitation). Nor has she shown exceptional circumstances to warrant the appointment of counsel, so her motion to that end is **DENIED**.[9] Doc. 2.

---

[9] Congress passed 28 U.S.C. § 1915(e)(1), which basically authorizes a judge to "pressure an attorney to work for free." *Williams v. Grant*, 639 F. Supp. 2d 1377, 1381 (S.D. Ga. 2009) (noting the "professional compulsion" lurking behind a judge's 28 U.S.C. § 1915(e)(1) request); *Nixon v. United Parcel Serv.*, 2013 WL 1364107 at * 2 n. 3 (M.D. Ga. Apr. 3, 2013). Even at that, a judge may do so "only in exceptional circumstances." *Heinisch v. Bernardini*, ___ F. Supp. 3d ___, 2015 WL 159058 at * 1 (S.D. Ga. Jan. 12, 2015) (quoting *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999)). Evans has not only failed to state a claim here, but there may also be some knock-out punches that otherwise drain her case of any vitality (her claims may be untimely, if

**SO REPORTED AND RECOMMMENDED,** this 9Th day of September, 2015.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

not defective merely because she failed to raise them before the EEOC, *see supra* notes 3, 4 & 5).