## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | |
|---|---|
| JAMEKA K. EVANS,<br><br>           Plaintiff,<br>v.<br><br>GEORGIA DEPARTMENT OF BEHAVIORAL HEALTH AND DEVELOPMENTAL DISABILITIES, and LISA CLARK, in her official capacity, and CHARLES MOSS in his individual capacity,<br><br>           Defendants. | CIVIL ACTION NO.<br>4:15-cv-00103-JRH-GRS<br><br>**SECOND AMENDED COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Jameka K. Evans, by and through her attorneys, files this Amended Complaint against Georgia Department of Behavioral Health and Developmental Disabilities, Lisa Clark, in her official capacity, and Charles Moss, in his individual capacity (collectively, "Defendants"), and alleges as follows:

### NATURE OF THE ACTION

1.      This Amended Complaint is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* as amended, and under 42 U.S.C. § 1981a to remedy unlawful and discriminatory employment practices to which Plaintiff was subjected to at Georgia Regional Hospital at Savannah because of her sex, and to provide appropriate relief to Plaintiff.  In addition, this Amended

Complaint asserts civil rights claims pursuant to 42 U.S.C. § 1983 for declaratory, injunctive, and other relief to redress the violation of Plaintiff's rights under the Fourteenth Amendment to the United States Constitution.  Specifically, Plaintiff alleges that Defendants violated her clearly established rights as a state governmental employee to be free from sex discrimination, including discrimination based on gender nonconformity.

## JURISDICTION AND VENUE

2.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because the matters in controversy arise under the laws and Constitution of the United States; and pursuant to 28 U.S.C. § 1343(a)(3) and (4) because the action is brought to redress deprivations, under the color of state authority, of rights, privileges, and immunities secured by the Constitution of the United States or by an Act of Congress, and seeks to secure damages and other relief under an Act of Congress.

3.     This Court has jurisdiction to declare the rights and legal relations of the parties and to order further relief pursuant to 28 U.S.C. §§ 2201 and 2202, as an actual controversy exists within this Court's jurisdiction.  This case is on remand from the United States Court of Appeals for the Eleventh Circuit.

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred within this judicial

district and division, and because Defendants reside within the State of Georgia, including Defendant Georgia Department of Behavioral Health and Developmental Disabilities, which resides within this district and division.

## PARTIES

5.     Plaintiff Jameka K. Evans ("Evans" or "Plaintiff") is an adult citizen of the United States and resides in Atlanta, Georgia.

6.     Georgia Department of Behavioral Health and Developmental Disabilities ("GDBHDD") was Evans's employer during the relevant time herein. GDBHDD is located in this judicial district, and at all times relevant herein, had in excess of 500 employees.  Georgia Regional Hospital at Savannah ("GRHS" or the "Hospital"), part of GDBHDD, is a 24-hour psychiatric hospital where Evans physically worked.

7.     Defendant Lisa Clark is an adult citizen of the United States and at all relevant times herein has served as the Director of Risk Management at GRHS, and was the direct supervisor of Charles Moss when he served as Facility Security Chief. She has the authority to implement the noneconomic relief sought by Plaintiff in this action.  Clark is sued in her official capacity.

8.     Defendant Charles Moss is an adult citizen of the United States.  He served as Facility Security Chief from mid-2013 until after Evans' employment at GDBHDD ended.  He is sued in his individual capacity.

## FACTUAL ALLEGATIONS

9.     Plaintiff became a full-time employee at GDBHDD in August 2012, as a Facility Safety Officer.  Prior to that, she had worked physically at GRHS, performing very similar duties, as a safety officer employed by Priority One, a private company with whom GDBHDD contracted.

10.     Plaintiff experienced no harassment or attempted sabotage while Lieutenant Alexander Fields, Jr. was Facility Safety Chief, a position he left in the first half of 2013.  During that time, Plaintiff had very limited interaction with Defendant Moss.  However, on one occasion Moss asked Plaintiff whether she was dating a female nurse on staff at the hospital.  Plaintiff was not dating the nurse, and said so.  Moss's question was neither in keeping with the very limited nature of his interaction with Plaintiff nor pursuant to any legitimate employment purpose. GDBHDD did not have a policy against romantic relationships between employees in different departments, and indeed such relationships were not uncommon during Plaintiff's employment at GDBHDD.

11.     Immediately upon becoming Facility Safety Chief in mid-2013, Moss began a systematic campaign of harassment and sabotage to force Plaintiff to quit. Moss was motivated in his efforts by bias against Plaintiff because of her failing to live up to his notions of how a woman should conduct herself, in appearance, dress,

or demeanor, or that she should be romantically interested in or attracted only to men.[1]

12.     Moss announced a new job title, "Star Corporal," and installed Shenika Johnson as the Star Corporal for the night shift to which he was reassigning Plaintiff. Thus, Johnson would be Plaintiff's supervisor, despite Plaintiff's having worked as a GDBHDD employee for a full year, and Johnson being a less senior GDBHDD employee.  Moss's decision to promote Johnson above (and instead of) Plaintiff was motivated by the fact that Plaintiff is a gender-nonconforming lesbian, while Johnson is as a feminine, gender-conforming woman who is romantically interested in men.

13.     Before Moss became Facility Safety Chief, safety officer shifts were divided three ways, essentially an 8-hour daylight shift, an 8-hour daytime-nighttime shift, and an 8-hour overnight shift.   Moss changed the schedule to two 12-hour shifts, from 7 a.m. to 7 p.m. and from 7 p.m. to 7 a.m.  Plaintiff was the only employee reassigned from the 8-hour daylight shift to the 12-hour nighttime shift. At the time Moss rescheduled Plaintiff, he and Johnson intended and believed that the shift change would prompt Plaintiff to quit.

---

[1] By making this allegation, Plaintiff is not currently attempting to state a claim of discrimination under Title VII based on her status as a lesbian; rather, such allegation is included for the sake of complete and truthful pleading.  Plaintiff does not press such a claim *at this time*, but reserves the right to pursue such a claim in the future should there be a change in controlling law.

14.     On or about July 3, 2013, as Plaintiff stood in the door's threshold to an office in which Plaintiff was performing her duties, Moss walked into the office. Moss inquired if Plaintiff had an assignment, to which Plaintiff said that she had pulled some contraband from a GRHS unit.  Following this exchange, Moss stated in substance that Plaintiff "can't hang out here," after which Moss repeatedly and intentionally physically slammed the office's door into Plaintiff.

15.     Plaintiff attempted to address the aforementioned mistreatment by Moss with GDBHDD personnel in charge at GRHS.  She communicated with Defendant Clark in mid-August 2013 regarding the aforementioned personnel actions and Moss's physically assaulting her by slamming a door into her in July 2013.  Clark initially indicated a possibility of addressing the shift change, but ultimately told Plaintiff to work the night shift.  Clark did nothing to address Plaintiff's concerns regarding the Star Corporal position or the physical assault by Moss.

16.     In a written complaint to HR in early September 2013 and during the resulting investigation, Plaintiff set forth and detailed both the aforementioned personnel actions and also incidents of physical and verbal harassment against her, both by Moss and at his behest, including the aforementioned assault.  GDBHDD's response to Plaintiff was that any reported incident, not corroborated by a fellow, active GDBHDD employee would be deemed unsubstantiated, notwithstanding the

corroboration provided by non-GDBHDD employees regarding admissions made by GDBHDD employees that supported Plaintiff's claim that Moss was seeking to end Plaintiff's employment at GDBHDD.

17.     In communicating the results of the investigation to Plaintiff, GDBHDD made clear in a letter to Plaintiff that it would not take steps to address Plaintiff's concerns.  Indeed, the GDBHDD letter appeared to ratify and condone Moss's behavior and mistreatment of Plaintiff, noting only minimal concerns.

18.     Specifically in discussing the results of the investigation with Plaintiff, the GDBHDD Human Resources individuals responsible for the investigation, Jamekia Powers and Cheryl Saunders, did not address whether Johnson would continue to supervise Plaintiff, or whether any change would be made to Plaintiff's status as the only employee who was re-assigned by Moss to the less favorable 12-hour nighttime shift.  Instead of focusing on Plaintiff's serious concerns, Powers notably asked Plaintiff if she was a "homosexual."  Plaintiff responded that, while she did not necessarily broadcast that fact to everyone, it was apparent from her masculine appearance and presentation that she is.

19.     After several attempts to seek help from GDBHDD Human Resource professionals, Plaintiff, having reasonably concluded that GDBHDD would neither act on the personnel actions adverse to her, meaningfully redress past incidents of physical and verbal harassment, nor protect her in any way from future incidents of

harassment, saw no other option but to leave her employment at GDBHDD on October 11, 2013. Plaintiff could not remain in such a position any longer despite her best efforts to rectify the situation.

20. Plaintiff then exhausted administrative remedies regarding her claim under Title VII by timely filing a charge of sex discrimination with the Equal Employment Opportunity Commission ("EEOC"), and filing the instant lawsuit within 90 days of receiving a Notice of Right to Sue from the EEOC.

21. The unlawful employment practices and discriminatory treatment complained of above were intentional, and were done with malice or with reckless indifference to Plaintiff's federally protected rights.

## CAUSES OF ACTION

### Count 1
### Violation of Title VII of the Civil Rights Act
### (Adverse Employment Action)
(Against Defendant GDBHDD)

22. Plaintiff re-alleges and incorporates paragraphs 1-21 as though fully set forth herein.

23. Plaintiff's qualifications for the Star Corporal position were equal to those of Shanika Johnson in every material respect, except experience, where Plaintiff's year of experience employed by GDBHDD rendered her plainly superior in qualifications to Johnson, a new hire. Nevertheless, Defendant Moss selected Johnson for the Star Corporal position to be Plaintiff's boss, motivated by Johnson's

conformity with gender norms regarding femininity and romantic interest in men, as contrasted with Plaintiff's nonconformity with gender norms given her masculine appearance and demeanor and lack of romantic interest in men.

24.    Plaintiff's efforts to redress this adverse employment action through the HR Department were rejected.

25.    The effect of the adverse employment action, motivated by sex stereotyping, was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex.  Plaintiff has sustained both noneconomic and economic damages as a target of discrimination, including lost compensation in salary and benefits, and expenses incurred in securing subsequent employment.

<u>**Count 2**</u>
<u>**Violation of Title VII of the Civil Rights Act**</u>
<u>**(Hostile Working Environment)**</u>
(Against Defendant GDBHDD)

26.    Plaintiff re-alleges and incorporates paragraphs 1-21 as though fully set forth herein.

27.    Defendant Moss, motivated by the fact that Plaintiff does not conform to gender norms with respect to her appearance, demeanor, and lack of romantic interest in men, created a hostile work environment that altered the terms of conditions of Plaintiff's employment.  Indeed, this was Moss's very goal, to subject Plaintiff to conditions of employment that no reasonable person would endure,

9

including reporting to someone clearly less qualified, enduring life-altering schedule changes that no other employee was subject to, and enduring pervasive harassment for which there would be no redress.

28.     Moss's physical assault of Plaintiff, with impunity, was in of itself sufficiently severe to alter the terms and conditions of Plaintiff's employment.

29.     Plaintiff's efforts to invoke the GDBHDD internal process to redress past incidents of harassment and mistreatment, and to ensure that the hostile working environment would not continue, were rejected.

30.     The effect of the adverse employment action, motivated by sex stereotyping, was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex.  Plaintiff has sustained both noneconomic and economic damages as a target of discrimination, including lost compensation in salary and benefits, and expenses incurred in securing subsequent employment.

**Count 3**
**Violation of the Fourteenth Amendment - Discrimination Based on Sex,**
**Pursuant to 42 U.S.C. § 1983**
(Against Defendant Clark in her Official Capacity and
Against Defendant Moss in his Personal Capacity)

31.     Plaintiff re-alleges and incorporates paragraphs 1-21 as though fully set forth herein.

32.     Defendants discriminated against Plaintiff, a gender-nonconforming woman, who is also a lesbian, in the terms and conditions of her employment at GDBHDD based on her sex.

33.     Defendants deprived Plaintiff of rights, remedies, privileges, and immunities guaranteed to every person, secured by 42 U.S.C. § 1983, including, but not limited to, the right guaranteed by the Fourteenth Amendment to the Constitution of the United States to the equal protection of the laws.

34.     Defendants Clark and Moss acted under pretense and color of state law and within the scope of their employment as GDBHDD officers and employees.

35.     Plaintiff, as a state governmental employee, enjoyed a constitutionally-protected right, to be free from sex-based discrimination and mistreatment because of her gender non-conformity.

36.     A state governmental employee's right to be free from sex-based discrimination and mistreatment because of her gender-nonconformity, whether the employee is lesbian, gay, bisexual, or transgender, or not, is clearly established by Eleventh Circuit precedent, including *Glenn v. Brumby*, 663 F.3d 1312 (11th Cir. 2011).

37.     Defendant Clark, at all times herein, was in charge of the Risk Management Department, which oversaw the Facility Security Department.  She exercised supervisory responsibility over Defendant Moss and the HR Department

11

employees who conducted the investigation into Plaintiff's allegations. Defendant Clark has both ultimate responsibility for the violation of Plaintiff's clearly established right to be free from sex discrimination and also the present power and authority within GDBHDD to implement the injunctive relief sought by Plaintiff in this action.

38.    Defendant Moss in taking all the actions attributed to him herein to mistreat Plaintiff with a goal of forcing the end of her employment at GDBHDD, acted willfully, maliciously, and with reckless disregard for Plaintiff's clearly established right to be free from sex discrimination, including adverse treatment of Plaintiff because of her gender nonconformity.

39.    Defendant Moss is liable to Plaintiff for all the economic and noneconomic damages she sustained, as well as an award of punitive damages.

40.    As a direct and proximate result of Defendants' conduct, Plaintiff sustained the damages alleged, including, but not limited to, deprivation of her constitutional rights to equal protection and equal dignity.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court order the following relief from Defendants, to the extent recoverable against each defendant:

A.    An award of appropriate back pay, lost benefits and prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary

to eradicate the effects of the discrimination Plaintiff endured, including but not limited to reinstatement or front pay;

B.      An award of compensation for past and future pecuniary losses resulting from the unlawful discrimination described above, including job search expenses, in amounts to be determined at trial;

C.      An award of compensation for non-pecuniary losses resulting from the unlawful employment practices described above, including inconvenience, emotional pain and suffering, embarrassment, anxiety, stress, depression, humiliation, loss of enjoyment of life, and violation of her dignity, in amounts to be determined at trial;

D.      An award of punitive damages for the malicious and reckless conduct described above, in amounts to be determined at trial;

E.      A permanent injunction enjoining GDBHDD and Clark from engaging in sex discrimination against employees, and engaging in any other employment practices that discriminate on the basis of sex and sex stereotypes;

F.      An order that GDBHDD and Clark institute and carry out policies, practices, and programs that provide equal employment opportunities for all employees and that eradicate the effects of its past and present unlawful employment practices;

G.     An award of Plaintiff's costs and disbursements, including reasonable attorneys' fees and costs; and

H.     An award granting such other and further relief as the Court deems necessary, just and proper.

## JURY TRIAL DEMAND

Plaintiff Evans requests a jury trial for all questions and issues for which a jury trial is available.

Dated:  February 20, 2018

Respectfully submitted,

*/s/ Gregory R. Nevins*
Gregory R. Nevins, GA Bar No. 539529
*Admitted pro hac vice by order of the Court*
Lambda Legal Defense and Educ. Fund, Inc.
730 Peachtree Street, NE, Suite 640
Atlanta, GA  30308-1210
Telephone: (404) 897-1880
Fax: (404) 897-1884
gnevins@lambdalegal.org
**LEAD COUNSEL**

Natalie Nardecchia
*Admitted pro hac vice by order of the Court*
Lambda Legal Defense and Educ. Fund, Inc.
4221 Wilshire Boulevard, Suite 280
Los Angeles, CA  90010
Telephone: (213) 382-7600
Fax: (213) 351-6050
nnardecchia@lambdalegal.org

W. Gerry Weber, GA State Bar No. 744878
Law Offices of Gerry Weber, LLC
P.O. Box 5391
Atlanta, GA 31107
Telephone: (404) 522-0507
wgerryweber@gmail.com

***Attorneys for Plaintiff***
***Jameka K. Evans***

## CERTIFICATION OF SERVICE

I hereby certify that on February 20, 2018, I electronically filed the foregoing SECOND AMENDED COMPLAINT with the Clerk of Court using the CM/ECF system, which will automatically send an email notification of this filing to the following attorneys of record:

**Katherine Powers Stoff**
Dept. of Law
40 Capitol Sq., SW
Atlanta, GA 30334-1300
404-656-6593
Fax: 404-657-9932
Email: kstoff@law.ga.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Courtney Coons Poole**
Georgia Department of Law
40 Capitol Square, SW
Atlanta, GA 30334-1300
404-656-3384
Fax: 404-657-9932
Email: cpoole@law.ga.gov
*ATTORNEY TO BE NOTICED*

So certified this 20th day of February, 2018.

*/s/ Gregory R. Nevins*
Gregory R. Nevins