IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

JAMEKA K. EVANS,                           *
                                           *
        Plaintiff,                         *
                                           *
            v.                             *        CV 415-103
                                           *
GEORGIA DEPARTMENT OF                       *
BEHAVIORAL HEALTH AND                       *
DEVELOPMENTAL DISABILITIES;                 *
CHARLES MOSS, in his personal               *
capacity; and LISA CLARK, in her *
official capacity,                          *
                                           *
        Defendants.                        *
                                           *

————————

O R D E R

————————

Before the Court is Defendants' Motion to Dismiss
Plaintiff's Second Amended Complaint in Lieu Of Answer. (Doc.
53.) Plaintiff has filed a response in opposition and
Defendants have filed a reply in support. (Docs. 58, 63.)
Accordingly, Defendants' motion has been fully briefed and is
ripe for review. For the following reasons, Defendants' motion
is **GRANTED IN PART AND DENIED IN PART**.

# I. BACKGROUND

## A. Factual Background

This case arises out of Plaintiff's employment with Defendant Georgia Department of Behavioral Health and Developmental Disabilities (the "GDBHDD"). Plaintiff claims that she was constructively discharged due to her gender nonconformity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. and 42 U.S.C. § 1983. Accepting Plaintiff's allegations as true and construing all inferences in her favor, as the Court is required to do, the facts of the case are as follows.

Plaintiff started working at Georgia Regional Hospital ("GRH") for the GDBHDD in August 2012. (Second Am. Compl., Doc. 52, ¶ 9.) Plaintiff did not experience harassment until her supervisor, Lieutenant Alexander Fields, Jr., was replaced by Defendant Charles Moss. (Id. ¶ 10.) The only interaction Plaintiff had with Mr. Moss before he became Plaintiff's supervisor was when Mr. Moss asked Plaintiff if she was dating a female nurse on the hospital staff. (Id.)

After becoming Facility Safety Chief, Mr. Moss created a new position, "Star Corporal," and selected Shenika Johnson — an employee with less experience than Plaintiff — to fill that position. (Id. ¶¶ 12, 25.) Mr. Moss also altered the work schedule and assigned Plaintiff to work from 7:00 p.m. to 7:00

2

a.m. (Id. ¶ 13.) Plaintiff was the only employee reassigned from the eight-hour day shift to the twelve-hour night shift. (Id.)

On July 3, 2013, Plaintiff was standing in the doorway of an office while performing her duties. (Id. ¶ 14.) Mr. Moss inquired if Plaintiff was keeping busy, and Plaintiff responded that she had pulled contraband from a GRH unit. (Id. ¶ 14.) Mr. Moss then responded that Plaintiff "can't hang out here," and proceeded to repeatedly slam the office's door into Plaintiff. (Id.)

About a month later, Plaintiff attempted to report Mr. Moss's behavior to Defendant Lisa Clark, Director of Risk Management at GRH. (Id. ¶¶ 6, 15.) Ms. Clark eventually told Plaintiff to continue working the night shift and never responded to Plaintiff's concerns about the door incident or being passed over for the Star Corporal position. (Id. ¶ 15.)

Plaintiff subsequently filed a written complaint with the GDBHDD human resources department. (Id. ¶ 16.) Plaintiff was informed, however, that any complaint that was not corroborated by a fellow GDBHDD employee would be deemed unsubstantiated, despite Plaintiff's ability to find non-GDBHDD employees to corroborate her story. (Id.) While discussing the investigation, Jamekia Powers — a GDBHDD human resources employee — asked if Plaintiff was a homosexual. (Id. ¶ 18.)

3

Plaintiff confirmed that it was apparent from her masculine appearance and presentation that she was a lesbian, but that she typically refrained from broadcasting such information. (Id.) The investigators subsequently made clear that they would not take action against Mr. Moss. (Id. ¶¶ 18-19.) Plaintiff alleges that she could no longer endure Mr. Moss's harassment and voluntarily ended her employment at GDBHDD on October 11, 2013. (Id. ¶ 19.)

## B. Procedural Background

Plaintiff initially filed her complaint, without legal representation, on April 23, 2015. (Compl., Doc. 1.) Plaintiff named GRH, Mr. Moss, Ms. Clark, and Ms. Powers as defendants and alleged violations of Title VII. Plaintiff claimed that Defendants discriminated against her due to her sexual orientation and gender nonconformity. The United States Magistrate Judge issued a Report and Recommendation ("R&R") granting Plaintiff's motion to proceed *in forma pauperis* and screening Plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). (Doc. 4.) The Magistrate Judge then found that neither sexual orientation nor gender nonconformity were actionable under Title VII. (Id. at 5-7.) Moreover, many of Plaintiff's Title VII claims were against individual defendants, which is inappropriate under Title VII. (Id. at 11-12 (citing

4

Bryant v. Dougherty Cnty. Sch. Sys., 382 F. App'x 914, 916 n.1 (11th Cir. 2010)).) Because Plaintiff had not engaged in protected conduct, the Magistrate Judge also recommended that Plaintiff's retaliation claim be dismissed. (Id. at 9-10.)

Plaintiff objected to the R&R claiming that discrimination based on gender nonconformity and sexual orientation is actionable under Title VII. (Doc. 9.) Plaintiff also asserted that as a pro se litigant, she was entitled to amend her complaint. (Id.) The Court adopted the R&R without further comment, dismissed Plaintiff's claims with prejudice, and appointed Gregory R. Nevins of the Lambda Legal Defense and Education Fund, Inc., to represent Plaintiff on appeal. (Doc. 12.)

On appeal, the Eleventh Circuit reversed the Court's Order with respect to Plaintiff's gender nonconformity claims. See Evans v. Ga. Reg'l Hosp., 850 F.3d 1248, 1254 (11th Cir. 2017). Because Plaintiff's complaint was not futile in this regard, the court also found that Plaintiff should have been granted leave to amend. Id. ("[I]t cannot be said that any attempt to amend would be futile with respect to her gender nonconformity claim and possibly others."). With respect to Plaintiff's sexual orientation claim, however, the Eleventh Circuit found that such

claims were not actionable under Title VII.[1]  **Id.**  Thus, the complaint was remanded to this Court with instructions to grant Plaintiff leave to amend her claim.  **Id.** at 1255.

On remand, Plaintiff amended her complaint to cure the deficiencies identified by the Eleventh Circuit in her Title VII claim.  (Doc. 28.)  She also added a claim under 42 U.S.C § 1983 against Mr. Moss and Ms. Clark.  (**Id.**)  On January 29, 2018, Defendants filed a motion to dismiss Plaintiff's Amended Complaint.  (Doc. 41.)  On February 20, 2018, however, without leave from the Court, Plaintiff filed her Second Amended Complaint.[2]  (Doc. 52.)  Defendants have subsequently moved to dismiss Plaintiff's Second Amended Complaint.[3]

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) does not test whether the plaintiff will ultimately prevail on the merits of the case.  Rather, it tests the legal

---

[1] Plaintiff waived her right to challenge the dismissal of her retaliation complaint by failing to make a specific objection.  **Evans**, 850 F.3d at 1257-58.

[2] Plaintiff argues that she was entitled to amend her complaint without leave because the Eleventh Circuit's mandate did not exhaust her right to amend her complaint once as a matter of course pursuant to Federal Rule of Civil Procedure 15(a).  In the alternative, Plaintiff asks the Court for leave to amend.  Because Rule 15(a)(2) mandates that leave be "freely give[n]" and Defendants have not objected, Plaintiff's motion for leave (doc. 58) is **GRANTED**.

[3] Plaintiff's Second Amended Complaint supersedes her First Amended Complaint.  See **Malowney v. Fed. Coll. Deposit Grp.**, 193 F.3d 1342, 1345 n.1 (11th Cir. 1999) ("An amended complaint supersedes an original complaint.").  Accordingly, Defendant's original motion to dismiss (doc. 41) is **DENIED AS MOOT**.

sufficiency of the complaint. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Therefore, the court must accept as true all facts alleged in the complaint and construe all reasonable inferences in the light most favorable to the plaintiff. See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002).

The court, however, need not accept the complaint's legal conclusions as true, only its well-pled facts. Ashcroft v. Iqbal, 556 U.S. 662 (2009). A complaint also must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plaintiff is required to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although there is no probability requirement at the pleading stage, "something beyond . . . mere possibility . . . must be alleged." Twombly, 550 U.S. at 556-57 (citing Durma Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005)).

### III.  DISCUSSION

Defendants move to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) & (6).[4] Defendants argue that Plaintiff's claims are time-barred under the applicable statute of limitations, that Plaintiff has failed to allege sufficient facts to state a plausible right to relief, and that Defendants Lisa Clark and Charles Moss are entitled to qualified immunity.

### A.  Statute of Limitations

Defendants argue that Plaintiff's new Section 1983 claims are barred by the statute of limitations.  Plaintiff responds that her claims "relate-back" to the filing date of her initial complaint and therefore are not time-barred.

Claims under Section 1983 are subject to Georgia's two-year statute of limitation for personal injuries.  <u>See</u> O.C.G.A. § 9-3-33; <u>Rozar v. Mullis</u>, 85 F.3d 556, 561 (11th Cir. 1996) ("Georgia's two-year personal injury limitations period applies to [a] claim under . . . sections 1983 and 1985.") "Because Georgia law provides the applicable statute of limitations in this case, if a proposed amendment relates back under Georgia law, then 'that amendment relates back under [Rule

---

[4] Although Defendants moved to dismiss Plaintiff's claims pursuant to Rules 12(b)(1), (2), (4), (5) & (6), Defendants subsequently abandoned their motion to dismiss under Rules 12(b)(2), (4) & (5). (Reply in Supp. of Defs.' Mot. to Dismiss, Doc. 63, at 2.)

15(c)(1)(A)] even if the amendment would not relate back under federal law rules.'" Presnell v. Paulding Cnty., 454 F. App'x 763, 767 (11th Cir. 2011) (quoting Saxton v. ACF Indus., Inc., 254 F.3d 959, 963 (11th Cir. 2001)). Under O.C.G.A. § 9-11-15(c), an amended complaint that adds new claims will relate back if the new claim arises out of the same "conduct, transaction, or occurrence." When an amended complaint adds new parties, however, O.C.G.A. § 9-11-15(c) provides:

> An amendment changing the party against whom a claim is asserted relates back to the date of the original pleadings if the foregoing provisions are satisfied, and if within the period provided by law for commencing the action against him the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

Plaintiff's Second Amended Complaint includes a new claim against Mr. Moss and Ms. Clark, who were parties in Plaintiff's original complaint. Defendants insist, however, that because the Title VII claims against Mr. Moss and Ms. Clark were dismissed, Plaintiff's amendment should be treated as adding a new party. Defendants' interpretation is contrary to the liberal construction Georgia courts apply when reading O.C.G.A. § 9-11-15. In Deering v. Keever, 646 S.E.2d 262, 264 (Ga. 2007), for example, the Georgia Supreme Court ruled that

9

an amended pleading will relate back even if the original pleading was legally inadequate. See also C&S Land, Transp. & Dev. Corp. v. Yarbrough, 266 S.E.2d 508, 512 (Ga. Ct. App. 1980) ("An amendment changing the capacity in which the plaintiff brings the action is permissible even after the statute of limitations has run, and since such amendment does not change the parties before the court, it should be liberally granted." (internal quotations omitted)). Even though Plaintiff's original claims were legally insufficient, Mr. Moss and Ms. Clark were named as Defendants. Indeed, once the Court of Appeals ordered this Court to grant Plaintiff leave to amend her complaint, she again named Mr. Moss and Ms. Clark as Defendants in her Amended Complaint and then again in her Second Amended Complaint. Neither her first or second amendment adds parties that were not named in her original complaint, and, therefore, Plaintiff's amendments will be treated as an amendment adding new claims.

Defendants cannot deny that Plaintiff's Second Amended Complaint involves much of the same allegations of discrimination that formed the basis of Plaintiff's original complaint.[5] Because Plaintiff's Second Amended Complaint

---

[5] Defendants, in their brief, admit "courts use the same framework to analyze claims of sex discrimination under Title VII and § 1983 which are based on the same set of facts. Defendants address Plaintiff's failure to state a claim for unlawful sex discrimination together." (Defs.' Br. in Supp. of Mot. to Dismiss, Doc. 53-1, at 14 n.7.)

involves the same "conduct, transaction, or occurrence" set forth in her original pleading, her new claims relate back to the date of the original complaint: April 23, 2015. Accordingly, her Section 1983 claim is not barred by the two-year statute of limitations under O.C.G.A. § 9-3-33.

## B. Mandate Rule

Defendants also claim that allowing Plaintiff to amend her complaint to add the Section 1983 claim would violate the Eleventh Circuit's mandate. The "mandate rule" forces district courts to strictly comply with a mandate rendered by the reviewing court. Piambino v. Bailey, 757 F.2d 1112, 1119 (11th Cir. 1985). The purpose of the doctrine is to avoid repeatedly litigating decided issues. Murphy v. F.D.I.C., 208 F.3d 959, 966 (11th Cir. 2000). "[A] mandate is completely controlling as to all matters within its compass, *but on remand the trial court is free to pass upon any issue which was not expressly or impliedly disposed of on appeal.*" Gulf Coast Bldg. & Supply Co. v. Int'l Bhd. of Elec. Workers, No. 480, 460 F.2d 105, 107-08 (5th Cir. 1972) (emphasis added).

Defendants argue that the Eleventh Circuit's instruction for the Court "to grant [Plaintiff] leave to amend *such claim*" was intended to limit Plaintiff's amendments to her Title VII claim. See Evans, 850 F.3d at 1254 (emphasis added). The

language in the Eleventh Circuit's opinion implying Plaintiff may have viable claims in addition to her Title VII action counsels against such a rigid interpretation. See, e.g., id. ("[I]t cannot be said that any attempt to amend would be futile with respect to her gender nonconformity claim and possibly others." (emphasis added)). Moreover, considering the explicit language the Eleventh Circuit used in disposing of Plaintiff's retaliation claim, the Court will not assume that such subtle language was intended to foreclose Plaintiff's ability to pursue an otherwise viable and significantly related claim. Because the Eleventh Circuit did not restrict Plaintiff's ability to look beyond her Title VII claim, allowing Plaintiff to add a Section 1983 claim would not violate the Eleventh Circuit's mandate.

## C.  Waiver of Right to Amend

Defendants also contend that Plaintiff has waived the opportunity to raise her Section 1983 claims after she failed to object to the Magistrate Judge's Report and Recommendation dismissing Plaintiff's individual Title VII claims against Mr. Moss and Ms. Clark. Although Plaintiff did object to not being granted leave to amend, Defendants insist that Plaintiff's objection was directed solely at dismissing her Title VII claims. Defendants support this argument by pointing to the

language of Plaintiff's objection which states that "[Plaintiff] should be allowed at least one opportunity to be granted leave to amend [her] complaint as new supplemental evidence has arisen that affirm the consistency of the claims alleged in [her] complaint with the claims investigated in the EEOC Charge." (Doc. 9.)  Adopting such a rigid interpretation would deny the liberal construction afforded to pro se pleadings.  Byrd v. Stewart, 811 F.2d 554, 554 (11th Cir. 1987) ("Pro se pleadings are to be held to a less stringent standard than pleadings drafted by attorneys.").

Even if the Court were not bound by the policy of liberally construing pro se pleadings, Defendants' interpretation essentially asks the Court to punish Plaintiff for failing to make an objection that at the time would have been frivolous. The Eleventh Circuit has long held that individuals cannot be held liable under Title VII.  See, e.g., Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991); Clanton v. Orleans Parish Sch. Bd., 649 F.2d 1084, 1099 n.19 (5th Cir. 1981). Requiring Plaintiff to make an objection claiming otherwise would be a waste of judicial resources.

## D.  Failure to State a Claim Upon Which Relief can be Granted

Defendants finally argue that Plaintiff failed to include sufficient factual allegations to state a hostile work

environment claim under Title VII or a discrimination claim under Title VII or Section 1983.

## 1. *Discrimination Claim*

Plaintiff's Second Amended Complaint sufficiently pleads a plausible Title VII and Section 1983 claim of sex discrimination on the basis of Defendants' failure to promote Plaintiff.[6]   A plaintiff may maintain an action for discrimination by alleging facts that show:

> (1) she is a member of a protected class; (2) she applied and was qualified for a position for which the employer was accepting applications; (3) despite her qualifications, she was not hired; and (4) the position remained open or was filled by another person outside of her protected class.

Trask v. Sec'y, Dept. of Veteran Affairs, 822 F.3d 1179, 1191 (11th Cir. 2016).   Although a plaintiff is not required to allege facts to make out a classic McDonnell Douglas *prima facie* case, she needs to "provide 'enough factual matter (taken as true) to suggest' intentional [gender] discrimination."   Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 974 (11th Cir. 2008) (quoting Twombly, 550 U.S. at 555).   In this case, Plaintiff alleges that she is a gender nonconforming woman and therefore belongs to a protected class.   Plaintiff also alleges

---

[6] Plaintiff employs Section 1983 as a remedy for the same conduct attacked under Title VII.   In such a case "'the elements of the two causes of action are the same.'"   Richards v. Leeds Police Dep't, 71 F.3d 801, 805 (11th Cir. 1995) (quoting Cross v. State of Ala., 49 F.3d 1490, 1508 (11th Cir. 1995)).   Accordingly, the Court analyzes Plaintiff's two claims together.

14

Ms. Johnson, a gender conforming woman that had less experience than Plaintiff, was selected for the Star Corporal promotion.

Defendants point out that Plaintiff fails to allege that she applied for the Star Corporal position. Yet the pleadings suggest that the position was unadvertised. Under such circumstances, a plaintiff can make a claim of discrimination due to failure to promote by showing that she was qualified for the position in question. Jones v. Firestone Tire & Rubber Co., 977 F.2d 527, 533 (11th Cir. 1992) (citing Carmichael v. Birmingham Saw Works, 738 F.2d 1126, 1133-43 (11th Cir. 1984)). Because Plaintiff has alleged that she was more qualified for the position than the candidate who was eventually selected, she has stated a plausible claim of discrimination.

2. *Hostile Work Environment Claim*

To allege a hostile work environment claim under Title VII, an employee must allege harassment "sufficiently severe or pervasive to alter the conditions of [her] employment." Pa. State Police v. Suders, 542 U.S. 129, 131 (2004). This, in turn, requires that the employee allege the following:

> (1) that [she] belongs to a protected group; (2) that [she] has been subject to unwelcome harassment; (3) that the harassment [was] based on a protected characteristic of the employee . . . (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such

15

environment under either a theory of vicarious or of direct liability.

Bryant v. Jones, 575 F.3d 1281, 1296 (11th Cir. 2009) (quoting Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002)).

Plaintiff's Second Amended Complaint fails to satisfy the third and fourth elements of a hostile work environment claim. As to the third element, although Plaintiff was asked about her sexuality on two occasions, she does not allege specific facts that any Defendant showed hostility toward her based on her gender nonconformity. Construing the allegation regarding Mr. Moss's question about Plaintiff's dating life in the light most favorable to Plaintiff, the question does not show bias towards gender nonconforming women. Similarly, Ms. Powers's question asking Plaintiff whether she was a "homosexual" also does not demonstrate bias towards gender nonconforming women. Even considering the totality of the circumstances, Plaintiff's complaint fails to show that the other alleged incidents were motivated by a bias against gender nonconforming women.

Turning to the fourth element, the employee must "subjectively perceive" the harassment as sufficiently pervasive to alter the terms and conditions of employment. Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993)). The

16

conduct must also be objectively severe and pervasive enough to alter the terms and conditions of employment, considering all of the circumstances. Id. Under the objective, "fact intensive" inquiry, courts consider four factors: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Id.

Here, the allegations in the amended complaint show that Plaintiff likely subjectively perceived Defendants' conduct as sufficient to alter the terms and conditions of her employment, evidenced by her HR complaint, EEOC filing, and initiating this lawsuit. Objectively, however, the alleged conduct does not rise to the level of altering the terms and conditions of her employment. Here, the four factors guide the Court's analysis.

First, the frequency of the conduct alleged is too sporadic to objectively alter the terms and conditions of Plaintiff's employment. Her complaint alleges that she was subject to at most six incidents of harassment over almost fourteen months of employment. (Second Am. Compl. ¶¶ 9-19.) The sporadic nature of such harassment does not alter the nature and conditions of employment. See Mendoza, 195 F.3d at 1249 (finding that five incidents over an eleventh month period were too infrequent to alter conditions of employment).

17

Second, as to the severity of the harassment, Plaintiff alleges Mr. Moss engaged in a "systematic campaign of harassment and sabotage" motivated by "bias against Plaintiff because of her failing to live up to his notions of how a woman should conduct herself." (Second Am. Compl., ¶ 11.) The only conduct, however, that could possibly be construed as severe enough to alter the terms and conditions of employment is the June 3 door slamming incident. The other alleged incidents lack the severity to show, as a matter of law, that the workplace was "permeated with discriminatory intimidation, ridicule and insult" such that Title VII is implicated. See Harris, 510 U.S. at 21.

Third, some of the alleged conduct can be considered physically threatening or humiliating. In particular, the door slamming incident, questions regarding Plaintiff's dating preferences, and having a less experienced employee promoted over her may well be humiliating to some. However, the Court finds that these incidents do not rise above mere offensive utterances into conduct that is so severe and pervasive as to alter the terms and conditions of Plaintiff's employment.

Finally, while the complaint does not explicitly allege how the conduct complained of unreasonably interfered with Plaintiff's job performance, the change in scheduling and

promotion of a less qualified employee may be treated as unreasonable interferences. Nevertheless, considering all of the circumstances, the Court finds, as a matter of law, that Plaintiff has not alleged sufficient facts to show the conduct altered the terms and conditions of her employment.

A comparison of this case to a recent case from the Northern District of Georgia is helpful. In Johnson v. Fulton Cnty., Ga., 2018 WL 2350172 (N.D. Ga. April 12, 2018), a gender nonconforming man brought a hostile work environment claim against his former employer and female supervisor. The plaintiff alleged his boss (1) made a comment about his genitals, (2) told him not to wear a dress, (3) used code words to refer to effeminate men, (4) complained of his hair style, (5) referred to masculine men and the women who associated with them as "tens" while effeminate or feminine acting men as "twos", and (6) made derogatory comments about the plaintiff's high-pitched feminine voice, his feminine mannerisms, and his feminine style of dress "any time" she had contact with him. Id. at *11.

The Johnson Court found those allegations to be "thin and create a close call" as to whether the plaintiff carried his burden on a motion to dismiss under Rule 12(b)(6). Id. Nevertheless, focusing on the allegation that **"any time** [plaintiff] had contact with [his boss], she made derogatory

19

comments about his high-pitched feminine voice, his feminine mannerisms, and his feminine style of dress," the Court found the plaintiff alleged just enough to nudge the claim from conceivable to plausible. Id. (emphasis in original) (citing Twombly, 550 U.S. at 570).

Here, however, Plaintiff's allegations do not rise to the same level. Her complaint alleges no similar derogatory comments that could nudge the claim from conceivable to plausible. The only two comments complained of are an inquiry into Plaintiff's dating life and a question asking whether she is a "homosexual," neither of which are as derogatory as direct negative comments about voice, mannerisms, dress, and hair style. The alleged comments are more appropriately characterized as "mere offensive utterances," which are not actionable under Title VII. See Mendoza, 195 F.3d at 1246. Accordingly, Plaintiff's Second Amended Complaint fails to sufficiently plead a viable hostile work environment claim under Title VII.[7]

## E. Qualified Immunity

Qualified immunity offers complete protection to government officials sued in their individual capacities when their

---

[7] Plaintiff's claim for constructive discharge necessarily fails given that she has not alleged a hostile work environment. See Bryant v. Jones, 575 F.3d 1281, 1298 (11th Cir. 2009) ("Establishing a constructive discharge claim is a more onerous task than establishing a hostile work environment claim.").

discretionary functions do not violate clearly established law. Harlow v. Fitzgerald, 457 U.S. 800, 815-18 (1982). However, government officials sued in their official capacities may not invoke the affirmative defense of qualified immunity. Mitchell v. Forsyth, 472 U.S. 511, 556 n.10 (1985) (citing Brandon v. Holt, 469 U.S. 464 (1985)). Because the defense provides immunity from suit, the Supreme Court has "repeatedly stressed" the need to resolve immunity questions at the earliest stage of litigation. Pearson v. Callahan, 555 U.S. 223, 231-32 (2009). To defeat qualified immunity a plaintiff must establish (1) that the official's conduct violated a statutory or constitutional right and (2) the right was clearly established at the time of the challenged conduct. Randall v. Scott, 610 F.3d 701, 715 (11th Cir. 2010); see also Pearson, 555 U.S. at 232-36.

Here, Defendant Lisa Clark is sued in her official capacity and therefore may not invoke a qualified immunity defense. Mitchell, 472 U.S. at 556 n.10 ("Of course, an official sued in [her] official capacity may not take advantage of a qualified immunity defense."). Defendant Charles Moss, however, is sued in his individual capacity and may properly invoke the defense. Thus, the Court must examine the complaint to determine whether Plaintiff alleged sufficient facts to defeat qualified immunity.

With regard to the first prong of the qualified immunity test, Plaintiff has sufficiently alleged that Mr. Moss's conduct violated her statutory and constitutional rights under Title VII and Section 1983, as shown in Section D.1, *supra*. Therefore, the determinative question is whether Plaintiff's right to have her workplace be free from sex discrimination based on gender nonconformity was clearly established at the time of the alleged wrongdoing.

Clearly established law is defined as law that is well enough recognized to provide officials with "fair notice" that the alleged conduct is unlawful. Hope v. Pelzer, 536 U.S. 730, 739 (2002). Case law is instructive in this determination, especially when "some authoritative judicial decision decides a case by determining 'X Conduct' is unconstitutional without tying that determination to a particularized set of facts, the decision on 'X Conduct' can be read as having clearly established a constitutional principle." Vineyard v. Wilson, 311 F.3d 1340, 1351 (11th Cir. 2002).

In Glenn v. Brumby, 663 F.3d 1312 (11th Cir. 2011), the Eleventh Circuit explicitly held that "discriminating against someone on the basis of his or her gender nonconformity constitutes sex-based discrimination." Id. at 1316. The court applied gender nonconformity sex discrimination to the

transgender plaintiff's Section 1983 claim, but noted that "[a]ll persons, whether transgender or not, are protected from discrimination on the basis of gender stereotype." Id. at 1318-19. This decision on gender nonconformity sex discrimination "can be read as having clearly established a constitutional principle" in the Eleventh Circuit. Vineyard, 311 F.3d at 1351.

Moreover, in Glenn, the Eleventh Circuit relied on Price Waterhouse v. Hopkins, 490 U.S. 228 (1989),[8] where the Supreme Court held that discrimination based on gender stereotypes is sex-based discrimination under Title VII. Id. at 250-51. In that case, a female employee suffered an adverse employment action because she was too "macho," she "overcompensated for being a woman," and she did not walk, talk, or dress in a feminine manner. Id. at 235. The Court announced that "we are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotypes associated with their group." Id. at 231.

Combined, these precedents show that an employee's right to be free from sex discrimination based on gender nonconformity was clearly established law at the time of Mr. Moss's alleged

---

[8] Price Waterhouse was superseded by statute on other grounds, 42 U.S.C. § 2000e-5(g)(2)(B), as stated in Landgraf v. USI Film Prods., 511 U.S. 244, 251 (1994). The holding relevant here, however, remains clearly established law.

misconduct in 2013. Case law from the Supreme Court and the Eleventh Circuit that espouses broad principles and specific factual scenarios regarding gender stereotype sex discrimination is sufficient to provide Mr. Moss with "fair notice" that such conduct is unlawful. Thus, at this juncture, on a motion to dismiss, the Court denies qualified immunity to Defendant Charles Moss.

### IV.  CONCLUSION

Plaintiff's Second Amended Complaint involves the same facts and parties as her original complaint and thus relates back to the date of her original complaint. Therefore, Plaintiff's claims are not barred by the statute of limitations. Furthermore, allowing Plaintiff to make these amendments is in line with the Eleventh Circuit's mandate.

While Plaintiff fails to state a claim for hostile work environment, she does allege facts that support a plausible claim of discrimination under Section 1983 and Title VII. Finally, neither Lisa Clark nor Charles Moss can be granted qualified immunity. Upon due consideration, Defendant's motion to dismiss (doc. 53) **IS GRANTED IN PART AND DENIED IN PART**. Plaintiff's claim for a hostile work environment under Title VII is hereby **DISMISSED WITH PREJUDICE**, while her claim of unlawful sex discrimination under Section 1983 and Title VII shall

24

proceed. The parties are directed to submit a proposed scheduling order within fourteen days.

**ORDER ENTERED** at Augusta, Georgia this 25th day of September, 2018.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA